**Nos. 2023-2074, -2075, -2191, -2192,**
**-2193, -2194, -2239, -2252, -2253, -2255**

# United States Court of Appeals for the Federal Circuit

CYTIVA BIOPROCESS R&D AB,

*Appellant*

v.

JSR CORP., JSR LIFE SCIENCES, LLC,

*Cross-Appellants*

*Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2022-00036, -00041, -00042, -00043, -00044, -00045*

## REPLY BRIEF OF CROSS-APPELLANTS JSR CORP. AND JSR LIFE SCIENCES, LLC

NAVEEN MODI
STEPHEN B. KINNAIRD
PHILLIP W. CITROËN
MICHAEL WOLFE
PAUL HASTINGS LLP
2050 M Street, N.W.
Washington, D.C. 20036
(202) 551-1700

ERIC W. DITTMANN
ISAAC S. ASHKENAZI
KRYSTINA L. HO
CARL J. MINNITI III
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6000

HIROYUKI HAGIWARA
PAUL HASTINGS FOREIGN LAW JOINT ENTERPRISE
Ark Hills Sengokuyama Mori Tower, Fortieth Floor
1-9-10 Roppongi, Minato-ku, Tokyo 106-0032 Japan
+81 3 6229 6100

*Counsel for Cross-Appellants JSR Corp. and JSR Life Sciences, LLC*

April 10, 2024

# AMENDED CERTIFICATE OF INTEREST

Counsel for Cross-Appellants JSR Corp. and JSR Life Sciences, LLC certify the following:

| 1. Full name of party represented by me | 2. Name of real party in interest represented by me | 3. Parent corporations and publicly held companies that own 10% or more of stock in the party |
|---|---|---|
| JSR Corp. | None. | None. |
| JSR Life Sciences, LLC | None. | JSR Corp. |

4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

None.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Cir. R. 47.5(a)-(b)

*See* Dkt. No. 8

6. Information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases.

Not Applicable

Dated: April 10, 2024

/s/ Eric W. Dittmann
Eric W. Dittmann

*Counsel for Cross-Appellants JSR Corp. and JSR Life Sciences, LLC*

# TABLE OF CONTENTS

**Page**


I. THE BOARD MISUNDERSTOOD THE CLAIMS TO BE LIMITED TO ISOLATING FAB FRAGMENTS— A CONSTRUCTION NEITHER PARTY SUPPORTS ....... 3

A. The Board Misunderstood the Claims ....... 3

B. Inherency Is Not a New Argument ....... 7

C. Cytiva's "Failure of Proof" Rationale Is a New Argument ....... 10

II. THE FAB BINDING CLAIMS WOULD HAVE BEEN OBVIOUS BASED ON THE COMBINATION LIGAND PROPOSED IN JSR'S PETITIONS ....... 14

A. The Board Failed to Address JSR's Combination Ligand Theory ....... 14

B. Cytiva Failed to Preserve Any Opposition to JSR's Combination Ligand Theory ....... 17

C. Cytiva's Belated Arguments Are Meritless ....... 19

III. EVEN IF FAB FRAGMENTS WERE THE REQUIRED TARGET, A POSA WOULD HAVE REASONABLY EXPECTED C(G29A) FAB BINDING ....... 23

CONCLUSION ....... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alacritech, Inc. v. Intel Corp.*,
966 F.3d 1367 (Fed. Cir. 2020) ....................15

*Allergan, Inc. v. Apotex Inc.*,
754 F.3d 952 (Fed. Cir. 2014) ....................5, 13

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
419 U.S. 281 (1974)....................14

*Cisco Sys., Inc. v. C-Cation Techs., LLC*,
IPR2014-00454, Paper 12 (P.T.A.B. Aug. 29, 2014)....................17

*Cont'l Can Co. USA, Inc. v. Monsanto Co.*,
948 F.2d 1264 (Fed. Cir. 1991) ....................10

*Corning v. Fast Felt Corp.*,
873 F.3d 896 (Fed. Cir. 2017) ....................16

*Google LLC v. EcoFactor, Inc.*,
92 F.4th 1049 (Fed. Cir. 2024) ....................4

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ....................5

*Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*,
No. 2022-1258, 2024 WL 1355733 (Fed. Cir. Apr. 1, 2024)....................7

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
424 F.3d 1336 (Fed. Cir. 2005) ....................12

*In re Longi*,
759 F.2d 887 (Fed. Cir. 1985) ....................28

*Novartis AG v. Torrent Pharms. Ltd.*,
853 F.3d 1316 (Fed. Cir. 2017) ....................15, 16

*In re Nuvasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ....................14, 15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Pfizer, Inc. v. Apotex, Inc.*,
480 F.3d 1348 (Fed. Cir. 2007) ....................28

*Rembrandt Diagnostics, LP v. Alere, Inc.*,
76 F.4th 1376 (Fed. Cir. 2023) ....................19

*Securus Techs., Inc. v. Glob. Tel*Link Corp.*,
685 F. App'x 979 (Fed. Cir. 2017) ....................14

*Synopsys, Inc. v. Mentor Graphics Corp.*,
814 F.3d 1309 (Fed. Cir. 2016) ....................15, 16

*In re Van Os*,
844 F.3d 1359 (Fed. Cir. 2017) ....................15

**Statutes**

35 U.S.C. § 112 ....................12

**Other Authorities**

37 C.F.R. § 42.6(a)(3) ....................17

37 C.F.R. § 42.23 ....................19

37 C.F.R. § 42.65 ....................25, 26

Cytiva's response to JSR's cross-appeal is a revisionist account of the Board's decision, substituting its own argument for the Board's rulings and presenting factual analysis on topics the Board never discussed. The Board's decision regarding the cross-appeal claims should be reversed, or at a minimum vacated and remanded, for three reasons.

*First*, the Board misinterpreted the claims at issue in this cross-appeal[1] to require isolation of Fab fragments—a construction that not even Cytiva defends. Under the proper, undisputed construction, the claimed Fab binding would inherently occur when conducting the isolation process of the independent claims, rendering the cross-appeal claims unpatentable. Contrary to Cytiva's arguments on appeal, JSR did not limit its arguments to the Board regarding inherency to Fab fragments. And Cytiva recognized the scope of JSR's argument as encompassing whole antibody purification early on in the case. Cytiva did not address JSR's inherency arguments on the merits, thus conceding the fact—a point JSR made in its Replies. Rather than opposing JSR's characterization that Cytiva had conceded inherency or arguing that JSR had failed to prove inherency, Cytiva chose again to

[1] The claims are claims 4 and 7 of U.S. Patent No. 10,343,142 and claims 11 and 29 of U.S. Patent No. 10,875,007.

avoid the issue in its Sur-replies. It is far too late now for Cytiva to begin contesting the merits of inherency.

*Second*, the Board failed to decide JSR's alternative unpatentability rationale regarding a combination ligand. Cytiva does not and cannot contest that JSR made this argument in its Petitions, and that the Board said nothing about it in its Final Written Decisions. At a minimum, remand is required. But here, reversal would be appropriate because Cytiva failed to contest this position in its Patent Owner Responses—the last chance it had to introduce evidence on the issue. On appeal, Cytiva digs up a single paragraph of its expert declaration, claiming that this lone paragraph was its response. But Cytiva said nothing on this issue in the Responses themselves. And even when it did respond in its Sur-replies and at the oral hearing, it did not point to this newly found paragraph for this argument. Nor is this single paragraph persuasive on the merits.

*Third*, the Board's lack-of-reasonable-expectation-of-success determination hinged on its finding that Jansson showed Fab-binding elimination for Domain Z. This finding lacks substantial evidence and is backed only by Cytiva's and its expert's unsupported attempts to rewrite Jansson as showing no binding at all for a SPA domain with the G29A mutation. In fact, the opposite is true: Jansson showed demonstrable (albeit lower) binding of the Z Domain to Fab fragments. Because some level of binding suffices to satisfy the Fab binding limitation of the cross-

appeal claims (which do not set any particular binding threshold), and due to the evidence showing promising Fab-binding characteristics of Domain C (which would have led to a reasonable expectation of success in at least some Fab binding of a C(G29A) ligand), this Court should reverse. At a minimum, this Court should vacate and remand for the Board to decide the required level of binding in the first instance—a determination that Cytiva agrees the Board did not make.

## I. THE BOARD MISUNDERSTOOD THE CLAIMS TO BE LIMITED TO ISOLATING FAB FRAGMENTS—A CONSTRUCTION NEITHER PARTY SUPPORTS

In upholding the cross-appeal claims, the Board relied on a construction of the claims that Cytiva now concedes neither party proposed. The claims require Fab binding, which can include binding to the Fab part of a whole antibody as well as to Fab fragments, and it was undisputed below that Fab binding is an inherent feature of the obvious process of the independent claims. At a minimum, remand is appropriate for the Board to decide this issue in the first instance under the proper, undisputed construction. But because Cytiva never contested the merits of inherency below, reversal is appropriate.

### A. The Board Misunderstood the Claims

Cytiva does not contest that limiting the cross-appeal claims to isolating Fab fragments would be an erroneous construction advocated by neither party. Instead, Cytiva denies that the Board understood the claims as such, accusing JSR of crafting

a "straw man construction." Cytiva's Response and Reply Brief ("CRB") 50. But the short portion of the Board's decision discussing the cross-appeal claims makes clear that the Board understood the claims to be restricted to binding to Fab fragments. JSR Principal Brief ("JPB") 59-60, 64-65.

The Board engages in claim construction when it "establishes the scope (e.g., boundaries) and meaning of the patented subject matter." *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1055 (Fed. Cir. 2024) (emphasis omitted). The Board did so expressly:

> Because claim 4 is directed to a "[a] process for isolating one or more target compound(s)" and identifies that the target compound is "the Fab part of an antibody" (Ex. 1001, 15:63–64) the prior art needs show a reasonable expectation that a mutated SPA ligand binds Fab. Without such a showing, there is no reasonable expectation that the process would result in the purification of a Fab target. *In other words, because the claims are process claims, Petitioner needs to establish that a mutated SPA domain would reasonably bind a Fab fragment.*

Appx102 (footnote omitted).[2] The Board then compounded its error by construing "[t]he present claims" to be "directed to a method of isolating Fab which *requires* prior knowledge that the ligand binds Fab," and concluding that the inherent structural property of the ligand to bind Fab would not suffice because Fab "fragments are not present in an IgG containing sample." Appx104 n.12. On appeal,

[2] Emphasis added unless otherwise specified.

Cytiva clings to the Board's statement requiring "that a mutated SPA ligand binds Fab" as "correct," CRB 50 (quoting Appx102), but ignores the Board's restriction of the claim—in that same paragraph—to "bind[ing] *a Fab fragment*." Appx102. The Board's declaration based on the claim language of what "Petitioner needs to establish" to show a reasonable expectation of success, Appx102,[3] and what the claimed method "requires," Appx104 n.12, is indisputably claim construction. The Board clearly misunderstood the claims to be limited to isolated Fab fragments.

Because the Board's erroneous understanding of the claims is apparent in its ruling, Cytiva tries to blame JSR for the Board's misunderstanding, claiming the Board was "simply rejecting the obviousness case that JSR set out to prove." CRB 50. This is an inaccurate rewriting of the record below. First, Cytiva readily accepts that "neither party advocated" for this construction, CRB 50, so its attempt to shift

---

[3] Reasonable expectation of success analysis must be tethered to the scope of the claims, and the Board errs if it imposes requirements in this analysis that are not in the claims. *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016); *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 966 (Fed. Cir. 2014) ("[F]ailure to consider the appropriate scope of the ... patent's *claimed invention* in evaluating the reasonable expectation of success ... constitutes a legal error that [is] review[ed] without deference.").

the blame to JSR is misdirected. Second, the Board's decision itself includes nothing indicating it was based on a supposed focus by JSR on Fab fragments. Instead, the Board grounded its understanding of the claims in nothing but the claim language itself. Appx102 (citing Appx391).

Third, Cytiva conflates the concepts of (1) arguments and (2) evidence supporting arguments, and ignores JSR's central argument. From the outset, JSR broadly argued that "'binding to the Fab part of an antibody,' as recited in claims 4 and 17 [of the '142 patent], is an inherent property of the recited C(G29A)-based SPA ligand." Appx587. This argument was not restricted to Fab fragments. Indeed, it is "undisputed" that the term "binding to the Fab part of an antibody"—argued to be inherent by JSR in its Petitions—"encompasses both binding to a Fab fragment without the rest of the antibody being present, or binding to the Fab region of a whole antibody." CRB 49-50. As support for this broad argument, JSR pointed to Cytiva's own patent specifications as evidencing the inherency of this "Fab-binding ability." Appx587-588; *see also* Appx3164-3166. But the fact that Cytiva's own patent specification disclosed tests on Fab fragments, Appx390, does not restrict JSR's inherency *argument* for "Fab-binding"—a term which Cytiva concedes includes binding to fragments as well as whole antibodies. *See also* Appx385 (defining Fab binding as including both binding to "full antibodies via Fab-binding" or "Fab fragments").

Cytiva also points to evidentiary citations in JSR's Petitions and expert declarations supporting an alternative obviousness position based on Linhult that addressed Fab fragments. CRB 51 (first citing Appx588, and then citing Appx3166-67). But the Board did not point to any of this as the basis for its erroneous restriction of the claims to isolating Fab fragments. And this evidence regarding JSR's alternative obviousness rationale did not restrict JSR's inherency arguments, which were not limited to fragments, as explained below.

For these reasons, the Court should reject Cytiva's attempt to lay the blame for the Board's erroneous construction at JSR's feet. *See Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*, No. 2022-1258, 2024 WL 1355733, at *8 (Fed. Cir. Apr. 1, 2024) (vacating district court's errant claim construction adding limitations that affected its obviousness analysis and rejecting patentee's arguments that "the district court simply followed [patent challenger]'s lead" and "the court was simply analyzing the obviousness theory that [patent challenger] presented, not adding limitations to the claims"). The Board's misunderstanding of the claims alone would warrant a remand, but reversal is proper here because Cytiva never contested JSR's inherency arguments on the merits.

### B. Inherency Is Not a New Argument

As described above, JSR's Petitions broadly argued that the Fab binding limitation for the cross-appeal claims was inherent. And JSR made clear that its

Petition arguments were not restricted to fragments. For instance, JSR's Replies pointed to the Board's institution decision recognizing "the target" to be "the antibody," rather than being restricted to targeting fragments, in arguing "Fab-binding … is an inherent property being claimed." Appx1801-1802. JSR also repeated the support in Cytiva's own patents for an inherency determination and expressly noted Cytiva's apparent concession of the issue—"Cytiva does not appear to dispute" that "Fab-binding was an inherent feature of a C(G29A)-based ligand." Appx1800-1801.

JSR's inherency arguments were further explained at the oral hearing. There, JSR emphasized that its rationale was based on antibodies "generally," and expressly rebutted Cytiva's argument that it was restricted to fragments. Appx2265. JSR argued that the motivation to combine for the independent claims was "increasing alkaline stability while maintaining *antibody binding, generally antibody*," and urging the Board to not be distracted by Cytiva's attempt to "shift this case and transform the obviousness analysis into focusing on fab binding." *Id.* Then, immediately after that, JSR explained "the motivation never changes" for the cross-appeal claims. Appx2265-2266 ("we're looking to also purify monoclonal antibodies and not just fab fragments"). Even more pointedly, JSR explained that "some of the claims even talk about just binding to fab. It could be in the context of an entire antibody. Who's to say it has to be actually a discrete fab fragment. It

could be it's binding to fab on a whole antibody." Appx2209. JSR's arguments before the Board were not limited to Fab fragments, and its inherency argument is certainly not new.

Cytiva was not caught off guard by this argument and never contended to the Board that it lacked an opportunity to respond. At the beginning stages of the proceeding, when Cytiva was deposing JSR's expert before its Patent Owner's Responses, Cytiva's counsel recognized JSR's broad positions regarding the cross-appeal claims that "the claim encompasses -- when it says the Fab part of an antibody, it encompasses both a Fab part of an antibody without the rest of the antibody or it could encompass the Fab part of an antibody plus some other stuff, perhaps even the whole antibody." Appx6286-6287. Counsel then clarified Dr. Cramer's inherency position under that broad understanding of binding, as recited in the cross-appeal claims: "Q. … So what you're saying is that if you make a C(G29A) ligand, that ligand, in fact, binds to Fab regions. A. That's a necessary thing to happen, yes." Appx6288. Neither JSR's arguments nor Dr. Cramer's opinions supporting those arguments was limited to Fab fragments, and instead applied to the "whole antibody," as Cytiva clearly recognized. *See also* Appx385 (Cytiva's specification defining "Fab-binding ligand" as "capable of binding to either full antibodies … or to … Fab fragments"). And Cytiva responded to this

argument at the oral hearing, if only briefly, Appx2250, and never once insinuated JSR was precluded from raising this theory.

Cytiva also faults JSR for supposedly arguing inherency too broadly in its Petitions, as "capabilities in the abstract." CRB 54. But, as described above, Cytiva recognized that JSR's argument included both fragments and whole antibodies and it responded by either avoiding discussion of inherency or conceding such binding was inherent in similarly broad language. JSR, in fact, noted this in its Replies. For instance, Cytiva's Responses broadly acknowledged that "it was found that C(G29A)-based SPA ligands retained substantial ***Fab-binding*** ability," Appx1499-1500, pointing to a different party's patent as support, Appx7378, Appx7395-7396 (Kaneka Corporation patent). *See also* Appx2288 ("we do accept that to everyone's surprise, it turns out that you can make C(G29A) ligands that ***bind to fab***."). Likewise, on appeal, Cytiva broadly acknowledges "the ***capability of binding to Fab*** is an inherent (albeit hitherto unknown and surprising) property of a C(G29A) ligand." CRB 54; *see also* CRB 48 ("maintaining the ***natural Fab-binding ability*** of Domain C in the presence of a G29A mutation was 'unexpected[]'").

### C. Cytiva's "Failure of Proof" Rationale Is a New Argument

Inherency requires the missing characteristic to be "necessarily present" in the prior art. *See Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264 (Fed. Cir. 1991). JSR presented evidence showing that Fab binding would necessarily occur,

including through the declarations and testimony of Dr. Cramer. Appx3164-3166 ("[I]t is also my opinion that the capability to bind to the Fab part of an antibody is a characteristic necessarily possessed by a C(G29A)-based SPA ligand."); Appx6288 ("That's a necessary thing to happen, yes."). In fact, the analogous portions of Dr. Cramer's declaration for the apparatus claims was cited approvingly by the Board in "agree[ing] with Petitioner [JSR] that the limitation of the Fab binding ability as recited in claim 4 is an inherent feature of the structure disclosed in the independent claim 1." Appx48 (citing Appx3017-3019); *compare* Appx3164-3166 (¶¶ 141-144), *with*, Appx3017-3019 (¶¶ 120-123). Cytiva never argued to the Board that JSR failed to produce evidence sufficient to support its inherency arguments.

Instead, Cytiva chose to argue only that inherency is irrelevant (because, per Cytiva, reasonable expectation of success also needed to be shown). Appx1496-1497. JSR identified Cytiva's failure to contest inherency on the merits, Appx1800, and Cytiva again responded by avoiding the issue or with passively worded concessions, Appx2012-2014 (portion of Cytiva's sur-reply addressing inherency); Appx2289 (addressing inherency at the oral hearing, arguing "[t]he point is, nobody would have expected that [Fab binding]"). This strategic avoidance of the issue was an understandable choice by Cytiva because the evidence JSR cited in its Petitions

to support inherency for Fab binding relied on Cytiva's own specifications. Appx819-20; Appx660-661.

To the extent that Cytiva now argues that the portions of its own specifications regarding Fab-binding are insufficient to support the fact that C(G29A) binds Fab in the manner claimed, it is walking into serious issues of lack of support under 35 U.S.C. § 112[4]—issues it chose to avoid before the Board by not addressing inherency one way or another.[5] Having chosen to ignore the issue of inherency

---

[4] For instance, Cytiva agrees the correct scope of its Fab-binding claims includes binding to whole antibodies. A patent specification must have Section 112 support for the *full scope* of the claims. *See LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005). Cytiva now asserts that the language from its specification regarding Fab fragments and testing thereof (the description JSR identified in its Petitions) is insufficient to support a theory regarding full antibodies. That is devastating to their 112 support for the full scope of the cross-appeal claims. *See also* Appx819 n.17 (expressly foreshadowing potential 112 issues in Petition).

[5] Additionally, had Cytiva argued below that Fab binding of whole antibodies (an embodiment Cytiva concedes would be within the scope of the claims, CRB 49-50) perhaps would not be an inherent property of performing whole antibody

before the Board rather than argue Fab binding is *not* inherent, or that JSR had failed to prove inherency, Cytiva cannot change horses now on appeal. The Court should hold Cytiva's failure-of-proof argument forfeited and determine that the required Fab binding is an admittedly inherent feature of the obvious process of the independent claims. Even if Cytiva's belated argument is not rejected out of hand by this Court, the next best course would be to remand for the Board to determine the inherency issue in the first instance.

Finally, Cytiva is incorrect that "the record is silent" on this issue. CRB 57. For the cross-appeal claims, Dr. Cramer presented his "first opinion" that "the capability to bind to the Fab part of an antibody is a characteristic necessarily possessed by a C(G29A)-based SPA ligand." Appx3164-3166. And as discussed above, it was clear that this inherency position "encompasses both a Fab part of an antibody without the rest of the antibody or it could encompass the Fab part of an antibody plus some other stuff, perhaps even the whole antibody." Appx6286-6288. Just because Cytiva's appeal brief skips over this "first opinion" and jumps straight

---

purification using a C(G29A) ligand, this would have undermined their unexpected results arguments, *see, e.g.*, Appx1499, which must be commensurate with the scope of the claims. *Allergan*, 754 F.3d at 963.

to Dr. Cramer's "second opinion," based on Linhult, CRB 51 (citing Appx3166-3167), does not mean there is no expert testimony on this issue.

## II. THE FAB BINDING CLAIMS WOULD HAVE BEEN OBVIOUS BASED ON THE COMBINATION LIGAND PROPOSED IN JSR'S PETITIONS

### A. The Board Failed to Address JSR's Combination Ligand Theory

The Board said nothing in its Final Written Decisions regarding JSR's combination ligand theory—an unpatentability theory that Cytiva now admits was "squarely presented in the briefs" and "discussed … at length at oral argument." CRB 62 (pointing to, *inter alia*, Appx5779 (JSR's demonstrative slide on this argument)). At a minimum, vacatur and remand is appropriate to allow the Board to explain its reasoning. *See In re Nuvasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016) ("The PTAB must provide a 'reasoned basis for the agency's action'") (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974)); *Securus Techs., Inc. v. Glob. Tel*Link Corp.*, 685 F. App'x 979, 987 (Fed. Cir. 2017) (vacating and remanding where "the Board failed to articulate *any* reasoning for reaching its decision as to these claims.") (emphasis original). Here, the Board did not even "summarize and reject arguments," let alone "explain[] why the [Board] accept[ed] the prevailing argument." *Nuvasive*, 842 F.3d at 1383.

The Court should reject Cytiva's plea for this Court to make a supposed "logical inference … that the Board did not consider the argument worthy of

mention." CRB 62; *see also id.* at 61-62. Under the APA, the Board is not entitled to make such a determination—instead, it must provide a "satisfactory explanation" for its decision. *Nuvasive*, 842 F.3d at 1382; *see also Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1372 (Fed. Cir. 2020) (rejecting party's argument that affirmance is required "so long as there is evidentiary support in the record, even if the support was not specifically cited by the Board" as "a fundamentally incorrect statement of the law"). At best, the decision whether such a combination ligand, as claimed in Cytiva's Hober reference, "makes no sense," CRB 59, would be one for the Board to make in the first instance, without Cytiva substituting its own rationale for the Board's. *See In re Van Os*, 844 F.3d 1359, 1362 (Fed. Cir. 2017).

Cytiva claims support from *Novartis AG v. Torrent Pharmaceuticals Ltd.*, 853 F.3d 1316, 1328 (Fed. Cir. 2017), and *Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1322 (Fed. Cir. 2016), but those cases do not support affirmance. *Novartis* involved a contention that the Board ignored a party's evidence that pointed away from motivation to combine and failed to weigh that evidence against evidence favoring motivation—not that the Board ignored the issue entirely. *Novartis*, 853 F.3d at 1327-28. While the Board need not "discuss each and every negative and positive *piece of evidence* lurking in the record to evaluate a cursory argument," *Novartis*, 853 F.3d at 1328, it cannot fail to address duly presented arguments.

*Synopsys* involved the fifth sub-argument in an appeal asking the Court to reverse the Board's decision finding the prior art did not disclose a particular claim limitation ("instrumentation signals indicative of execution status"). *Synopsys*, 814 F.3d at 1322. This Court's decision rejecting that argument was based on redundancy of the evidence. The Board had described why a "tempout" signal did not meet the claim limitation, but had done so in context of figure 9 of the prior art. *Id.* Synopsis argued that the Board failed to address its argument that the "tempout" signals in Figures 16 and 18 also qualified, but this Court held it was not error for the Board to not expressly address Figure 18's tempout signal because it was "the same type of signal" and the "arguments for why it discloses (and does not disclose) [the limitation] are, in essence, the same." *Id.* Thus, like with *Novartis*, the Board addressed and rejected the argument, but it did not need to individually reject each piece of evidence allegedly supporting that argument.

Here, the Board failed to address JSR's combination ligand argument at all, and no other rationale from its decision addressed the same issue. For this reason, at a minimum, remand is appropriate here. But because Cytiva failed to respond in its Patent Owner Responses, it left an imbalance of evidence that makes reversal appropriate as well. *Corning v. Fast Felt Corp.*, 873 F.3d 896, 901 (Fed. Cir. 2017).

### B. Cytiva Failed to Preserve Any Opposition to JSR's Combination Ligand Theory

On appeal, Cytiva argues that it did respond—in a single paragraph of its expert's declaration. CRB 58 (citing Appx7319-7320 (Bracewell Decl. ¶ 128)). But Cytiva points to nothing at all in its Responses—because there is nothing—and incorporation by reference of expert testimony into a substantive paper is not allowed before the Board.[6] Furthermore, the paragraph Cytiva now touts on appeal was never cited to the Board for this argument, even in Cytiva's Sur-replies, Appx2006-2007 (discussing the combination ligand in the paragraph starting with "Separately"), even after JSR had noted that Cytiva failed to address the argument, Appx1801 n.15. To the extent that Cytiva now believes this one paragraph of Dr. Bracewell's declaration is dispositive, why would it not have cited it in the only paragraph in its papers addressing this argument or contested JSR's assertion that Cytiva had "ignore[d]" this argument? *Id.*; Appx1801.

---

[6] 37 C.F.R. § 42.6(a)(3); *Cisco Sys., Inc. v. C-Cation Techs., LLC*, IPR2014-00454, Paper 12 at 10 (P.T.A.B. Aug. 29, 2014) (designated informative) ("[W]e will not consider arguments that are not made in the Petition, but are instead incorporated by reference to the cited paragraphs and claims charts of [the expert's] Declaration."); Appx7734 (Board's Scheduling Order explaining "Patent Owner is cautioned that any arguments not raised in the response may be deemed waived").

Cytiva attempts to excuse its failure to respond earlier by suggesting that JSR's argument was obscured because "Hober was not even in the ground where JSR raised the argument." CRB 60-61. This is elevation of form over substance by Cytiva. The IPR2022-00041 and IPR2022-00042 proceedings involved Linhult as the primary reference, combined with Abrahmsen, Hober, or both. Appx621-624; Appx783-785. Although Hober is not a part of Ground 1, where the combination ligand argument is articulated for the first time, Hober is a part of the other grounds that incorporate this argument. *See, e.g.*, Appx831 (pointing back to "Section X.A.4" containing the combination ligand argument); Appx850 (arguing "[a] POSA would have constructed the recited SPA-based affinity ligand disclosed in Abrahmsen and Hober to reasonably ensure that the matrix possessed Fab-binding capability, as described in Hober, to arrive at claims 4 and 17 for the same reasons described in Section X.A.4"—the section expressly discussing the combination ligand theory). And even if Hober were not part of any ground, that would not provide a basis for Cytiva to completely ignore the argument in its PORs and for the Board to ignore the issue. Indeed, it was an argument that Cytiva now admits was "squarely presented" to the Board. CRB62.[7]

---

[7] It is also notable that Cytiva's criticism that "Hober was not even in the ground," CRB 60-61, was never made to the Board as an excuse for its failure to

Cytiva also touts the lack of any finding of waiver by the Board as to this issue, arguing "the Board never intimated that Cytiva was somehow precluded" from addressing the argument. CBR at 61. The Board's silence, however, is meaningless because the Board did not discuss this argument at all. It is entirely possible that, if the proceedings are vacated and remanded, the Board could refuse to consider Cytiva's response as a new theory raised in sur-reply—a decision that would be well within the Board's discretion. *See Rembrandt Diagnostics, LP v. Alere, Inc.*, 76 F.4th 1376, 1383 (Fed. Cir. 2023) ("We have held that in some circumstances the Board acts within its discretion when declining to consider … a new theory of patentability raised by patent owner in sur-reply."); *see also* 37 C.F.R. § 42.23 ("A sur-reply may only respond to arguments raised in the corresponding reply and may not be accompanied by new evidence other than deposition transcripts of the cross-examination of any reply witness.").

### C. Cytiva's Belated Arguments Are Meritless

The substance of that paragraph includes a claim construction argument by Dr. Bracewell that Cytiva echoes on appeal. CRB 58-59 (citing Appx7319-7320). This argument should be rejected for several reasons. As an initial matter, Cytiva

---

respond—either in its sur-reply or at the oral hearing—even though JSR expressly noted in its Replies that "Cytiva … ignore[d]" this argument, Appx1801.

never made this argument in its papers to the Board (or at the oral hearing); it did not ask the Board for a construction excluding the combination ligand; and, as explained above, it did not even cite this paragraph of Dr. Bracewell's declaration for the combination ligand argument.

Regardless, Dr. Bracewell's attempted claim construction is misguided, as JSR and Dr. Cramer pointed out below. Appx1801 n.15; Appx5556-5557. The relevant claim language concerns the ligand in the independent claims:

> at least one ligand coupled to the solid support, the ligand comprising at least two polypeptides, wherein the amino acid sequence of each polypeptide comprises at least 55 contiguous amino acids of a modified SEQ ID NO. 1, and wherein the modified SEQ ID NO. 1 has an alanine (A) instead of glycine (G) at a position corresponding to position 29 of SEQ ID NO. 1;

Appx391 (claim 1(a)(ii)).

Dr. Bracewell argued that the term "each polypeptide" meant that only C(G29A) sequences could be included in the ligand. Appx7319-7320. JSR and Dr. Cramer responded that Dr. Bracewell ignored the effect of the term "comprising" on the claim, which allowed for additional elements, such as "additional amino acid sequences (or domains)." Appx5556-5557; Appx1801 n.15.

Cytiva adds an additional flourish on appeal that appears nowhere in its or Dr. Bracewell's arguments below—that the language of the cross-appeal claims requiring "*the ligand* binds" (and not "something else in the matrix") supposedly

precludes JSR's argument. CRB 59 (emphasis original). But this misreads JSR's argument that "the ligand" is composed of C(G29A) plus additional monomer units. Appx820-821 ("A POSA would have therefore constructed *the recited SPA-based affinity ligand* to include—in addition to C(G29A) monomer units taught by Linhult and Abrahmsen—one or more monomer units based on naturally-occurring SPA domains.").

Apart from the single paragraph of Dr. Bracewell's declaration that Cytiva did not cite in support of its combination ligand argument below, the only response Cytiva actually presented in its papers (in its Sur-replies) was that a POSA would not have been motivated to make such a ligand based on Cytiva's reading of Hober as preferring identical units. Appx2006-2007. Cytiva repeats this argument on appeal. CRB 59-60. But Cytiva reads Hober—its own reference[8]—too narrowly. Hober specifically disclosed *and claimed* such a combination ligand of non-identical units. Appx3850; Appx3878. Thus, Cytiva's own attempts to secure patent coverage for such a combination belies its argument that such a combination "makes

---

[8] The Hober applicant was Amersham Biosciences AB, a predecessor-in-interest to Cytiva. Appx3839.

no sense." CRB 59.[9] In other words, to the extent the combination ligand is a "monster," as Cytiva suggests, *id.*, Cytiva itself is Frankenstein. To the extent Cytiva is arguing the Board should credit its current, litigation-inspired arguments over the express disclosures in its own Hober reference, the Board should be allowed to make (or reject) that factual determination in the first instance.

* * *

JSR presented an unpatentability theory based on a combination ligand that was expressly proposed in Hober—Cytiva's own reference—and Cytiva failed to mount a response in its Responses. Due to the resulting imbalance of evidence, the

---

9 In fact, the specifications of the patents at issue also contradict Cytiva's argument that a multimer ligand would not be composed of different monomer units. Appx387 ('142 patent at 7:27-45 ("[T]he present invention also relates to a multimeric chromatography ligand (also denoted a 'multimer') comprised of at least two Domain C units" and, "[i]n another embodiment, the multimer comprises one or more additional units, which are different from Domain C and preferably protein-based and equally alkaline-stable as Domain C")). A POSA would have expected the G29A modification to improve Domain C's alkaline stability, and thus a C-plus-C-plus-C(G29A) ligand would fall squarely within this teaching, even though Cytiva argues on appeal it "makes no sense." CRB 45, 59.

Court can reverse on this basis. At a minimum, the Court should vacate and remand for the Board to make findings as to this issue in the first instance.

## III. EVEN IF FAB FRAGMENTS WERE THE REQUIRED TARGET, A POSA WOULD HAVE REASONABLY EXPECTED C(G29A) FAB BINDING

Cytiva agrees that the Board did not settle the dispute between the parties regarding the required level of Fab binding for the claims. CRB 63 ("JSR is correct … that the Board never resolved the question …."). And Cytiva does not rebut JSR's argument that no significant binding threshold is required by the claims. JPB 70-72. Nor does Cytiva rebut JSR's showing that Domain C showed the best Fab binding among the natural domains—what Cytiva's expert described as "the most promising" domain for Fab binding. JPB 73-75; Appx5428. Thus, the relevant question is whether the Board's finding that Jansson "shows that the single G29A mutation … results in the loss of Fab binding," Appx103-104—*i.e.*, no binding whatsoever—was supported by substantial evidence. The Board based this finding on Jansson's Figure 3 as purportedly showing a "loss" of Fab binding in Panel B for Domain Z, without addressing Panel C. *Id.* But Panel C shows Fab binding for Domain Z, and Cytiva has no response to that panel. Instead, Cytiva attempts to rewrite Jansson's conclusion to its preferred reading of "~~little to~~ no" binding. But Jansson's express words show that Domain Z has at least a "little" binding, as

confirmed by its scFv experiments. The Board's conclusion that Jansson shows an utter elimination of Fab binding therefore lacks substantial evidence.

It is apparent from Jansson's Figure 3 alone that the G29A modification in Domain B, which resulted in Domain Z, caused a reduction in Fab binding, but not elimination.




Appx1805 (annotating Appx7373). The Board ignored the scFv binding evidenced in Panel C, which qualifies as Fab binding. *See, e.g.*, Appx7373 (referring to "scFv immunoglobulin fragments"); Appx7374 ("scFv ('Fab')").

Cytiva tried to explain away this fact through attorney argument—presenting a normalization theory that it attempted to support with a bare citation to Jansson and a snippet of Dr. Cramer's cross-examination. JPB 73 n.13; Appx2008-2009. Cytiva contends on appeal that it "presented expert testimony on this exact point," CRB 64 (first citing JPB 73 n.13, and then citing Appx7316-7317), but that simply is not the case. The two paragraphs of Dr. Bracewell's declaration that Cytiva cites do not discuss Panel C in particular, or even hint at the normalization theory from

Cytiva's Sur-replies. Appx7316-7317. And notably, Cytiva did not even cite these paragraphs as supposedly supporting its counterargument to Figure 3 in its Sur-replies. *See* Appx2008-2009. Furthermore, Cytiva appears to entirely abandon the normalization theory on appeal, nowhere supporting or explaining it further.

The two paragraphs of Dr. Bracewell's declaration that Cytiva now prefers also do not support zero binding. Although those two declaration paragraphs are long, there is very little discussion on the point of zero versus minimal binding. Appx7316-7318. First, Dr. Bracewell opined that "little to no" would have meant "below the limits of reliable detection," which would have led to no "expectation that any such binding was present." Appx7316. But Dr. Bracewell provided absolutely no support for that opinion, and such conclusory opinions without the underlying facts or data are insufficient under the Board's rules. 37 C.F.R. § 42.65. Furthermore, Dr. Bracewell's conclusion that "little to no" means "below the limits of detection" directly clashes with the data in Jansson showing binding *was* detected in Panel C for scFv.

Second, Dr. Bracewell generically opined that the "art suggested" a "complete removal of any Fab-binding activity." Appx7317. But the only support he pointed to for this assertion was his own rewriting of a theory in the "Discussion" portion of Jansson. Appx7317 (citing Appx7375). There, Jansson theorized that the "alanine in domain Z" (referring to the G29A mutation) "point[s] towards … helix 3," which,

to Jansson's authors, "suggest[ed] the possibility that this helix might be involved in the binding to Fab." Appx7375. Jansson concluded that "[i]t is possible that this difference influences the binding surface to Fab and thus generates the difference in affinity." *Id.* Dr. Bracewell re-reads this as "hypothesiz[ing] that the G29A mutation eliminated a structural motif that was necessary to Fab binding." Appx7317. But that simply is not supported by the heavily qualified theory in Jansson mentioned quoted above. And even if Dr. Bracewell's errant reading were assumed correct, that does not explain the binding shown in Panel C of Jansson.

At bottom, Dr. Bracewell's re-imagining of the minimal binding shown in Jansson as zero binding is without support. Cytiva's brief calls it a "credible explanation," CRB 64, but the Board never credited this explanation (nor did it credit the normalization theory that Cytiva has now abandoned). Instead, the Board's decision rested on Jansson's Figure 3 as purportedly showing a "loss" of Fab binding in Panel B, without addressing the Fab binding shown in Panel C. Appx103-104.

Cytiva also points to two statements in the prior art not mentioned by the Board (from Atkins, Appx5961, and Graille, Appx6233) because they suggest that Domain Z "lacks," or is "devoid" of, Fab binding activity. CRB 65. Putting aside that this does not address the modified domain at issue (Domain C), like Dr. Bracewell's revision of Jansson, the references' statements are unsupported.

And in fact, the record evidence shows Domain Z does not "lack," and is not "devoid" of, Fab binding ability—including Jansson's Panel C itself.

Like Jansson's Panel C, Ljungberg also showed that Domain Z is not "devoid" of Fab binding ability. Cytiva's own expert conceded the binding of a ligand composed of five Z domains in Ljungberg was "significant." Appx5435 ("[Y]es, I would say that is significant.").

Table 3. Affinity constants of SpA, V1, Z-V, ZZ, EB and Z bound to IgG, IgA, IgM and $F(ab')_2$ determined by saturation and competitive inhibition studies

| | Affinity constants ($\times 10^{-8}$ $M^{-1}$) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | IgG | | IgA | | IgM | | $F(ab')_2$ | |
| Protein | Sat. | Comp. | Sat. | Comp. | Sat. | Comp. | Sat. | Comp. |
| SpA | 26 | 25 | 31 | 21 | 31 | 32 | 10 | 8.8 |
| V1 | 5.7 | 6.1 | 5.9 | 4.3 | 6.1 | 4.9 | 2.2 | 2.3 |
| Z-V | 30 | 20 | 12 | 5.4 | 12 | 7.1 | 6.3 | 6.8 |
| ZZ | 4.8 | 4.3 | 1.3 | nd[a] | 3.6 | nd | 0.7 | nd |
| EB | 3.9 | 2.2 | 0.3 | nd | 2.8 | nd | 0.5 | nd |
| Z | 2.2 | 2.8 | 0.3 | nd | 1.9 | nd | 0.1 | nd |

Appx7478 (annotated).

Although Cytiva asserts "Dr. Bracewell addressed this too," CRB 66, all Dr. Bracewell did in this portion of his redirect testimony was to read aloud Ljungberg's statement of "low binding" and theory that a "structural motif which is not present in [Domain] Z and which is necessary for Fab-binding." Appx5441 (reading Appx7479). But neither of these statements explains the data itself, which Dr. Bracewell called "significant," rather than "low." The disparity in linguistic

characterization of the binding is best understood as a difference between Cytiva's expert and the Ljungberg authors in their opinions as to the significance of the binding detected. This shows that the Board should have determined the threshold level of binding required by the claims to properly evaluate the prior art's teachings.

Cytiva tries to undermine this expectation of some level of Fab binding in a C(G29A) ligand by resorting to unpredictability. CRB 66. But "obviousness cannot be avoided simply by a showing of some degree of unpredictability in the art so long as there was a reasonable probability of success." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1364 (Fed. Cir. 2007); *In re Longi*, 759 F.2d 887, 897 (Fed. Cir. 1985) ("Only a reasonable expectation of success, not absolute predictability, is necessary for a conclusion of obviousness."). And Cytiva's dependence on unpredictability undermines its core argument that a POSA would have expected a mutation that caused diminished Fab binding in Domain B to also predictably cause diminished binding in Domain C.

All of this shows that the Board's conclusion that Panel B of Jansson's Figure 3 eliminates a reasonable expectation of success because the G29A modification resulted in "loss" of Fab binding capacity in Domain Z was unsupported. Because the record supports that *some* Fab binding would have been expected from a C(G29A) ligand—particularly given the promising Fab binding characteristics of Domain C, JPB 73-75—the Board needed to determine the level of binding required

by the claims to appropriately weigh whether a POSA would have had a reasonable expectation of success.

## CONCLUSION

For the above reasons, this Court should reverse the Board's rulings as to the Fab binding method claims at issue in JSR's cross-appeal.

Dated: April 10, 2024

Respectfully Submitted,

/s/ Eric W. Dittmann
Eric W. Dittmann
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

*Attorney for Cross-Appellants*
*JSR Corp. and JSR Life Sciences, LLC*

## CERTIFICATE OF SERVICE

I, Eric W. Dittmann, hereby certify that on April 10, 2024, the foregoing brief was filed using the Court's CM/ECF system and a copy served on the parties' counsel of record via ECF.

Dated: April 10, 2024

BY: /s/ Eric W. Dittmann

Eric W. Dittmann
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

*Attorney for Cross-Appellants*
*JSR Corp. and JSR Life Sciences, LLC*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Circuit Rule 32 and Federal Circuit Rule 28.1(b)(2)(A).

The brief contains 6,382 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

The brief has been prepared in a proportionally spaced typeface using MS Word 2013 in a 14 point Times New Roman font.

Dated: April 10, 2024

BY: /s/ Eric W. Dittmann

Eric W. Dittmann
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

*Attorney for Cross-Appellants JSR Corp. and JSR Life Sciences, LLC*